# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| RAMONA MACHELLE WILLIS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | No. 4:16-CV-677-CAN |
| § | |
| NANCY A. BERRYHILL, § | |
| Acting Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ramona Machelle Willis ("Plaintiff") brings this appeal under 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits [Dkt. 1]. On March 4, 2017, the case was referred to the undersigned for all further proceedings and the entry of judgment in accordance with 28 U.S.C. §636(c) and the consent of the Parties. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the Administrative Record, the Court finds that the Commissioner's decision should be **AFFIRMED.**

## BACKGROUND

### I. PROCEDURAL HISTORY OF THE CASE

This is an appeal from a denial of Plaintiff's disability insurance benefits. On February 4, 2014, Plaintiff filed her application for Title II disability insurance benefits ("DIB"), wherein she alleged she has been disabled since June 9, 2013,[1] due to rheumatoid arthritis, bilateral

---

[1] Plaintiff originally alleged disability on June 10, 2012, but later amended her alleged onset date to June 9, 2013 [TR at 61, 164].

knee replacements, chronic neck and back pain, depression, coronary artery disease, very limited mobility, memory loss, osteoporosis, osteoarthritis, and hypertension [TR at 61, 80-81, 164-167, 217]. Plaintiff's application was denied initially on July 17, 2014, and again on reconsideration on October 6, 2014 [TR at 29, 80-109, 117-120]. On October 28, 2014, Plaintiff filed a written request for a hearing and Donald R. Davis, an Administrative Law Judge ("ALJ"), held a hearing on January 5, 2016 [TR at 58, 110-13, 118-20], at which Plaintiff, represented by counsel, and a vocational expert, Talesia Beasley ("VE") testified [TR at 58-59, 309]. On March 2, 2016, after reviewing the evidence and testimony, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act") [TR at 29-50]. On June 29, 2016, the Appeals Council denied review, making the ALJ's decision the Commissioner's final administrative decision [TR at 1-4]. Plaintiff now seeks judicial review in this Court under 42 U.S.C. §405(g). On September 1, 2016, Plaintiff filed her Complaint [Dkt. 1]. The Court received Administrative Record from the Social Security Administration ("SSA") on November 29, 2016 [Dkt. 9]. On March 3, 2017, this case was assigned to the undersigned by consent of all Parties for further proceedings and entry of judgment [Dkt. 15]. Plaintiff filed her Brief on January 4, 2017 [Dkt. 11], and the Commissioner filed a Brief in Support of the Commissioner's Decision on March 3, 2017 [Dkt. 16].

## II. STATEMENT OF RELEVANT FACTS

### 1. *Age, Education, and Work Experience*

Plaintiff was born on April 23, 1960 [TR at 80], making her fifty-three years of age on the alleged onset date of June 9, 2013. *Id.* at 61. Her age classification on the alleged onset date was "closely approaching advanced age." *See* 20 C.F.R. § 416.963(d). Plaintiff has completed high school [TR at 61]. Plaintiff has an extensive work history, beginning at AT&T from October 1995

to September 2005. [TR at 107]. She also worked at Ford Motor Credit from March 2004 to February 2006, then at DHL from June 2006 to August 2008 before her most recent work as a Mortgage Loan Officer at Bank of America from September 2009 to 2013. [TR at 106].

### 2. *Relevant Medical Record Evidence*

Plaintiff has the following impairments: obesity, history of knee replacements, osteoporosis, coronary artery disease, hypertension, carpal tunnel syndrome, arthritis, history of fusion, fibromyalgia syndrome, bipolar disorder, depressive disorder, and Sjorgen's syndrome [TR at 32].

#### a. *Treating Sources*

Plaintiff has an extensive history of knee impairments, which began on July 20, 2010, when she reported knee pain to Dr. Ho B. Oei, who noted that Plaintiff was obese [TR at 406]. Plaintiff underwent bilateral knee replacement surgery, performed by Dr. Michael Muncy, on November 4, 2010. [TR at 486-89]. On January 27, 2011, Dr. Muncy reported that Plaintiff had developed arthrofibrosis and had significantly limited ranges of motion in both knees, and so Dr. Muncy performed a manipulation under anesthesia. [TR at 484-85]. Dr. Muncy later performed revision procedures on both knees on April 19, 2012. [TR at 482-483]. He reported on July 10, 2012 that Plaintiff was progressing well and was happy with the results of the surgery. [TR at 473]. However, three years later, on April 8, 2015, Plaintiff presented to Dr. Allaadin Mollabashy reporting continued knee pain, and Dr. Mollabashy prescribed Plaintiff a walker for lifetime use. [TR at 810]. Several weeks later on May 29, 2015, Dr. Mollabashy performed a second revision procedure on Plaintiff's right knee. [TR at 1053-55].

Plaintiff's history of back trouble began on April 25, 2013, when Plaintiff reported feeling pain and numbness in her hands for the past several months. [TR at 541-44]. On August 15, 2013,

Dr. Neil Shah performed a fusion surgery on Plaintiff's spine at C3-C4. [TR at 629-31]. On April 15, 2014, Plaintiff presented to Dr. McColm and reported she was still in constant back pain. [TR at 496]. Dr. Shah reviewed new images of Plaintiff's spine on May 9, 2014, but determined that her spine was stable and well aligned. [TR at 619]. Nearly a year later on April 21, 2015, Dr. Mark Valente examined bone scans of Plaintiff and determined she would likely need to undergo another fusion procedure at C3-C4. [TR at 916]. Dr. Valenta reported degenerative changes in Plaintiff's spine, including spinal stenosis at C3-C4 and moderate bilateral neural narrowing at C7-T1 on August 25, 2015. [TR at 1180]. Plaintiff received a second opinion on her spine on November 23, 2015 from Dr. Shah, who reported moderate to severe disc disease with a right complex facet joint synovial cyst and severe spinal canal stenosis at L4-5. [TR at 1177].

Plaintiff also has a history of psychological, immunological, chronic pain, and cardiovascular impairments. On November 1, 2011, a psychiatrist, Dr. Sherry Huey You-Surles, determined that Plaintiff was suffering from severe depressive symptoms, as well as moderate manic and anxiety symptoms. [TR at 642]. On September 8, 2012, Dr. Oei reported that a lip biopsy taken from Plaintiff was consistent with Sjorgen's syndrome, an immune system disorder that causes severely dry eyes and mouth. [TR at 428]. In January of 2014, Dr. Oei reported that he believed fibromyalgia may be the source of Plaintiff's continued complaints of pain and that Plaintiff exhibited tenderness in sixteen of eighteen tenderness points. [TR at 461, 465]. Finally, Plaintiff had several cardiovascular imaging tests performed on May 15, 2015, by Dr. Neil Phung, who determined that Plaintiff suffered from mild left ventricular hypertrophy and moderate mitral regurgitation, but that her systolic and diastolic functions were normal. [TR at 1084-89].

Plaintiff has been seeing Dr. Vincent McColm as her primary care physician since May 25, 2007. [TR at 1125]. Dr. McColm completed a Residual Functional Capacity Assessment

and a Mental Capacity Assessment for Plaintiff on November 18, 2015. [TR at 1123-25, 1128-31]. Dr. McColm stated that Plaintiff could lift ten pounds occasionally, sit for two hours in an eight-hour work day, and stand or walk for zero hours in an eight-hour workday. He also noted that Plaintiff would need to take breaks every ten to fifteen minutes and was limited to using her hands for only ten percent of the workday. [TR at 1123-25]. Dr. McColm also reported that Plaintiff had "Moderate" limitations in understanding and remembering simple and detailed instructions, as well as "Marked" limitations in performing activities within a schedule or without special supervision. [TR at 1128]. He also reported that Plaintiff had "Extreme" limitations in working a full workday without psychological interruptions. [TR at 1129]. Dr. McColm concluded that in his opinion Plaintiff was not physically capable of working an eight-hour day, five days a week, on a sustained basis. [TR at 1124].

      b.     *Examining Sources*

Plaintiff underwent a Consultative Examination conducted by Dr. John M. Joseph on August 5, 2015 [TR at 1132-35]. During his examination, Dr. Joseph noted that Plaintiff had been previously diagnosed with Sjorgen's Syndrome and suffered from dry eyes and mouth [TR at 1133]. He also noted that Plaintiff had a history of sleep apnea, but did not use a CPAP machine [TR at 1133]. Dr. Joseph reported that Plaintiff suffered from moderate to severe fatigue, was status post bilateral knee replacement, and had undergone revision procedures on both knees, although the surgeries had not been satisfactory, as Plaintiff still reported persistent pain and lack of mobility [TR at 1133]. Dr. Joseph reported that Plaintiff had undergone surgery on her spine at C3-C4 and C5-C6, and was status post gastric bypass surgery [TR at 1133]. He further noted that Plaintiff was moderately obese and suffered from Fibromyalgia and depression. [TR at 1134].

Dr. Joseph concluded by recommending water therapy for decreasing Plaintiff's pain and increasing mobility, as well as reducing the amount of NSAIDs taken by Plaintiff. [TR at 1135].

### c. *State Agency Consultants*

On October 6, 2014, Plaintiff underwent a physical examination conducted by Dr. Robert White on behalf of the State Agency [TR at 101]. Dr. White found that Plaintiff was capable of carrying or lifting twenty pounds occasionally and ten pounds frequently, standing or walking for two hours in an eight-hour workday, and sitting for six hours in an eight-hour workday [TR at 102]. He also opined that Plaintiff could occasionally climb ramps and stairs, and could never climb ladders, ropes or scaffolds [TR at 103]. Dr. White also noted that Plaintiff could occasionally balance, stoop, bend, crouch, and crawl [TR at 103].

On October 1, 2014, Plaintiff underwent a mental examination conducted by Dr. James Wright on behalf of the State Agency. [TR at 104]. Dr. Wright found that Plaintiff could understand, remember, and carry out detailed, but not complex, instructions. [TR at 104]. He also found that Plaintiff could make decisions, attend and concentrate for extended periods of time, accept instructions, and respond appropriately in a work setting. [TR at 105-06].

## III. THE HEARING

### 1. *Plaintiff's Testimony*

Plaintiff testified that she stopped working in June of 2013 because she passed out while at work [TR at 62]. It was discovered that she had a bulging disc in her cervical spine that required surgical correction; however, she did not recover as expected [TR at 62]. Plaintiff further testified that the pain feels like her neck is "burning off her shoulders," and that she cannot type due to the pain [TR at 63]. She also testified that two spine specialists had recommended she undergo another spinal surgery [TR at 63].

Plaintiff testified that she had knee replacement surgery in 2011 and had undergone several revision procedures, two on the left and three on the right knee [TR at 64]. She testified that her pain is "horrible," and that she is in pain when she walks. [TR at 64]. Plaintiff testified she could only remain on her feet for fifteen to twenty minutes at a time, but then she must sit down due to the pain [TR at 64]. She described the pain as "stabbing", and that her knees would get stiff [TR at 64]. Plaintiff testified that she takes pain medication but that relief from the medication is brief [TR at 64-65]. She further testified that she needed to elevate her legs to reduce the pain, estimating she needed to have her legs elevated for twenty hours a day [TR at 65].

## 2. *Vocational Expert Testimony*

Also present at the hearing was VE Dr. Talesia Beasley [TR at 59]. Dr. Beasley testified that all of Plaintiff's past work had been sedentary [TR at 69]. She also found that Plaintiff's past work as a Mortgage Loan Processor at Bank of America was considered "Semi-skilled" work, with a skilled vocational preparation ("SVP") of five and Dictionary of Occupational Titles ("DOT") number of 249.262.018 [TR at 71, 313]. Dr. Beasley testified that if Plaintiff could not work a forty-hour work week, there would be no work available to the Plaintiff in either the local or national economy [TR at 70]. She further testified that Plaintiff's most recent work at Bank of America did not require more than frequent handling [TR at 70].

When cross-examined by Plaintiff's counsel, Dr. Beasley testified that Plaintiff's prior job at Bank of America did not include frequent contact with the public [TR at 70]. She also testified that Plaintiff being limited to only understanding detailed instructions would not limit Plaintiff from performing her most recent work at Bank of America [TR at 70].

## IV. FINDINGS OF THE ALJ

### 1. *Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of his disability claim is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.* Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

## 2. ALJ's Disability Determination

After conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since June 9, 2013, the alleged onset date [TR at 31]. At step two, the ALJ determined the Plaintiff had the following severe impairments: obesity, history of knee replacements, osteoporosis, coronary artery disease, hypertension, carpal tunnel syndrome, arthritis, history of fusion, fibromyalgia syndrome, bipolar disorder, depressive disorder, and Sjorgen syndrome [TR at 32]. At step three, the ALJ found that Plaintiff did not have an impairment, or a combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [TR at 36].

At step four, the ALJ determined that Plaintiff had the residual functional capacity to perform light work, specifically finding that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently [TR at 41]. The ALJ also found that Plaintiff can stand or walk for two hours of an eight-hour workday, and sit for six hours of an eight-hour workday [TR at 41]. The ALJ determined Plaintiff could occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds and could occasionally balance, stoop, kneel, crouch, and crawl [TR at 41]. The ALJ also found that Plaintiff can frequently manipulate with her hands, understand, remember, and carry out detailed, but not complex, instructions, and respond appropriately to changes in a routine work setting [TR at 41]. The ALJ limited Plaintiff to only working in 2-hour intervals between breaks, and determined Plaintiff should not be employed in fast-paced assembly line work [TR at 41]. Continuing the step four analysis, the ALJ determined that Plaintiff was capable of performing her past relevant work as a mortgage loan officer, and therefore ended his

analysis at step four [TR at 49]. Based on this determination, the ALJ concluded that Plaintiff was not disabled from June 9, 2013 to March 2, 2016 [TR at 50].

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

After reviewing both Plaintiff's and Commissioner's briefs, the Court discerns two primary issues on appeal: (1) whether the ALJ failed to fully develop the record, and (2) whether the ALJ gave the opinions of Plaintiff's treating sources appropriate weight. The Court will review both issues in turn.

*Failure to Fully Develop the Record*

Plaintiff contends that the ALJ committed prejudicial error when he declined to request further examinations of Plaintiff to determine whether there were any limiting effects of Plaintiff's pain that were not reasonably caused by a particular impairment [Dkt. 11 at 4-5]. Plaintiff specifically cites three instances in the ALJ's Notice of Decision in which the ALJ hints at ordering a further examination of Plaintiff, but does not do so: (1) the ALJ allegedly recognized "that the effect of Willis'[s] pain needed to be evaluated by a pain specialist, [and] then noted 'I am informed in other cases that such an examination is not available in this locale,'" [Dkt. 11 at 5, quoting TR at 34]; (2) the ALJ considered a "mini-Work Evaluation," but found "[u]nfortunately, no work evaluation has been performed and so I must rely upon inferences drawn from the medical and other evidence of record to decide the case using hypotheticals" [Dkt. 11 at 5, quoting TR at 44]; and (3) the ALJ "recognize[ed] that holes needed to be patched with regard to the treating source opinions, [but] the ALJ reported that '[u]nfortunately, I have been informed in other recent cases that such a request cannot be effectuated'" [Dkt. 11 at 5, quoting TR at 46].

Further, Plaintiff responds that she was prejudiced by the ALJ's failure to request further consultative examination because:

> if the ALJ had fully developed the record and patched the alleged holes in the treating physician opinions of Drs. Mollabashy and McColm, holes which [Plaintiff] does not concede exist, those opinions would have been fully supported by the record and therefore entitled to great weight. In addition, proper evaluation by a pain specialist and a proper work capacity evaluation would have verified the extent of pain being experienced by [Plaintiff] and the overall limiting effect of her combined impairments, which would preclude her from performing substantial gainful activity

[Dkt. 11 at 6-7]. The Commissioner responds that Plaintiff takes each of these statements out of context, and when viewed in context, none of these statements contain "any determination by the ALJ regarding the development of Plaintiff's administrative record." [Dkt. 16 at 5]. Moreover,

the Commissioner asserts that Plaintiff's arguments are irrelevant to raising a "requisite suspicion" in this case. [Dkt. 16 at 6-7]. Moreover, the Commissioner argues that Plaintiff has wholly failed to demonstrate how she was prejudiced by this alleged error [Dkt. 16 at 7].

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits to ensure the ALJ's decision is supported by substantial evidence. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). A court will reverse the ALJ's decision as not supported by substantial evidence if the claimant shows: (1) the ALJ failed to fulfill this duty to adequately develop the record; and (2) that this failure prejudiced the plaintiff. *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). The burden to prove disability by demonstrating a physical or mental impairment lies with the claimant, while ordering consultative examinations is within the discretion of the ALJ. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987); 20 C.F.R. § 404.1512(a). The ALJ is required to request more documentation only where there is no relevant evidence from other treating sources. *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012).

### 1. *Consultative Exam Unnecessary*

Full inquiry does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the ALJ to make the disability decision. *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977). The decision to order a consultative exam is within the ALJ's discretion. *See Harper v. Barnhart*, 176 Fed.Appx. 562, 566 (5th Cir. 2006); *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). Plaintiff must, however, present evidence that raises a suspicion of impairment for a consultative exam to be necessary. *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). A consultative examination is not necessary when substantial evidence supports the ALJ's conclusion. *See Turner*, 563 F.2d at 671. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). In the present case, substantial evidence in the record supports the ALJ's conclusion that Plaintiff is not disabled. Although the ALJ alluded to the utility of a consultative examination, there is no indication that the ALJ found the evidence in the record inconclusive or otherwise inadequate to render a decision. In regard to the chronic pain issue, it is clearly evident from the record that the ALJ considered Plaintiff's complaints of chronic pain and her medical records [TR 33-36]. Considering the issue of the ALJ not ordering a "mini-Work Evaluation," it is clearly evident from the record that the ALJ considered Plaintiff's triggers and symptoms, medical records, and her activities of daily living [TR 33-36]. With regard to the issue of the ALJ not "patching the holes" in Drs. Mollabashy and McColm's opinions, it is clearly evident from the record that the ALJ considered the discrepancies in each physician's opinion as "more form than of substance" and further details the resolution of these discrepancies in the decision [TR at 46-47]. There is also no evidence that Plaintiff raised the need for or independently sought an additional consultative examination at the hearing (where she was represented by counsel) or at any time before the ALJ rendered his decision. *See Norris v. Berryhill*, No. 3:15-CV-3634-BH, 2017 WL 1078524, at *17 (N.D. Tex. Mar. 22, 2017). Substantial evidence exists in the record that supports the ALJ's finding of no disability, and therefore further examination of Plaintiff was not necessary.

### 2. *Plaintiff Has Adduced No Evidence That Would Show a Possibility of An Altered Result*

Moreover, for this Court to reverse and remand, Plaintiff must show that she was prejudiced by the ALJ's decision to not order a consultative examination, if one was necessary. *See Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012). To show prejudice, Plaintiff must show

that had the ALJ requested the necessary examination, she would have adduced evidence that would have altered the result. *See Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984).

Even if the Court found that a further examination of Plaintiff was necessary for the ALJ to properly determine disability, Plaintiff has failed to present any evidence that would show the possibility of an altered result if the ALJ had ordered an examination. In her brief, Plaintiff accuses the Social Security Administration of systemic failure in not requesting consultative examinations with more frequency [Dkt. 11 at 5]. However, Plaintiff failed to cite any evidence that a different outcome was possible if ALJ had requested a further examination of Plaintiff besides a conclusory remark that an examination "would have verified the extent of pain experienced." *Id.* at 7. This is not enough to show a possibility of an altered result had the ALJ requested a further examination. The Court finds that a further examination of Plaintiff by a pain specialist, a "mini-Work Evaluation," and follow-up consultations with Drs. Mollabashy and McColm were not necessary for the ALJ to make a determination of disability. Accordingly, the ALJ did not fail to fully develop the record.

*The ALJ Afforded Proper Weight to the Medical Opinions in the Record*

Plaintiff's next point of contention is that the ALJ failed to afford proper weight to the medical opinions in the record [Dkt. 11 at 8]. Plaintiff contends that the ALJ did not conduct the relevant 20 C.F.R. § 404.1527(c) factors correctly, and failed to state good cause for the weight given to the medical opinions in the record [Dkt. 11 at 8]. Defendant responds that Plaintiff mischaracterizes some of the medical opinions given by Dr. Mollabashy, that Dr. McColm's and Dr. You-Surles's opinions are not supported by each doctor's own medical findings.

*1.  Requirements for Giving Weight to Treating Physician*

The weight to be given to medical opinions in Social Security cases depends in large part on whether the opinions are proffered by treating, examining, or nonexamining physicians. In the Fifth Circuit, the treating physician rule provides that the opinion of a claimant's treating physician on a medical issue (i.e., the nature and severity of a patient's impairment) is entitled to great weight. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995). A treating physician's opinion regarding the severity and nature of a plaintiff's impairment must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with…other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)).[2] The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician; and when an examining physician's opinion is contradicted by another doctor, it also may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. *See Bradley v. Bowen*, 809 F. 2d 1054, 1057 (5th Cir. 1987); *see also Cline v. Astrue*, 577 F. Supp. 2d 835, 845 (N.D. Tex. 2008).

To that end, SSA Regulations provide that the ALJ "will always give good reasons in [a] notice of determination or decision for the weight [the ALJ gives the claimant's] treating source's opinion," and also list the factors an ALJ must consider to assess the weight to be given to the

---

[2] 20 C.F.R. § 404.1527 has been revised several times since the Fifth Circuit's opinions in *Newton* and in *Martinez* and those courts' reference to subsection (d)(2) refer to the factors now present at subsection (c)(2) of 20 C.F.R. § 404.1527. *Compare* 20 C.F.R. § 404.1527 (effective to July 31, 2006) *with* 20 C.F.R. § 404.1527 (Aug. 24, 2012). The Court further notes that for all claims filed on or after March 27, 2017, the Rules in § 404.1520c (not 1527) shall apply.

opinion of a treating physician when the ALJ determines that such opinion is not entitled to "controlling weight." *See* 20 C.F.R. § 404.1527(c)(2). As stated in *Newton*:

> Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. [T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

209 F.3d at 455-56 (internal citations and quotation marks omitted).

Thus, unless controlling weight is given to a treating physician's opinion, the SSA regulations specifically require consideration of the following factors set forth in 20 C.F.R. § 404.1527(c)(2) (hereinafter "the relevant factors") in deciding the weight given to each medical opinion: (1) length of treatment relationship and frequency of examination; (2) nature and extent of treatment relationship; (3) supportability of the medical opinion; (4) consistency; (5) specialization of the physician; and (6) other factors. *See* 20 C.F.R. § 404.1527(c)(2) (listing factors to consider); *Newton*, 209 F.3d at 456 (stating the Fifth Circuit requires consideration of each of the 20 C.F.R. § 404.1527(c)(2) factors); *Boyd v. Barnhart*, 258 F. Supp. 2d 1013, 1020 (E.D. Miss. Mar. 26, 2003) (unless a treating source's opinion is given controlling weight, the ALJ must explain the weight given to the opinions of other physicians). The Court must also consider if the error is a harmless error. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

### 2. *Factors to be Considered Before Declining to Give Treating Physicians' Opinions Controlling Weight*

SSA regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *See* 20 C.F.R. § 404.1527(c)(2). Section 404.1527(c) requires the ALJ to consider specific factors to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." *Id.* Specifically, the ALJ must consider: (1) examining relationship; (2) treatment relationship; (3) supportability of the medical opinion; (4) consistency; (5) specialization of the physician; and (6) other factors. *See* § 404.1527(c) (listing factors to consider). The ALJ must consider all six of these factors if "controlling weight" is not given to a treating physician's medical opinions. *Id.* (unless the ALJ gives a treating source's opinion controlling weight under paragraph (c)(2) of this section, the ALJ must consider all of the following factors in deciding the weight we give to any medical opinion); *Newton*, 209 F.3d at 456 (stating the Fifth Circuit requires consideration of each of the 20 C.F.R. § 404.1527(c)(2) factors).

### 3. *Weight Afforded Dr. McColm, Dr. Mollabashy, and Dr. You-Surles's Opinions*

The ALJ determined that Plaintiff has the RFC to "lift and/or carry and/or push/and/or pull 20 pounds occasionally and 10 pounds frequently, stand and/or walk (with normal breaks) for a total of two hours in an eight hour work day and sit (with normal breaks) for about six hours in an eight-hour workday….occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl….frequently handle and finger. She is able to understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in a routine work setting….should be restricted to work for only 2-hour

intervals between breaks, but can sustain a full 8-hour workday. She is also limited to frequent contact with the public, and she should avoid fast-paced assembly line work" [TR at 41].

Dr. Vincent McColm saw Plaintiff for three appointments at the Medical Clinic of North Texas between August 2013 and April 2014 [TR 496, 504, 513]. In November 2015, Dr. McColm opined that Plaintiff could not stand, needed 30-minute breaks every 15 minutes, could not remain mentally stable during an eight-hour workday, could not consistently show up for work, and could only use her hands for 10% of the time [TR at 1123-1124, 1129]. The ALJ did not afford controlling weight to Dr. McColm's opinion after finding it to be "brief and conclusory" [TR at 45]. The ALJ also walked through each of the aforementioned factors, and stated that Dr. McColm's opinions were not sufficiently detailed or consistent with medical expectations, and that the opinions did not trace some of Plaintiff's alleged extreme limitations back to a medical cause [TR at 45-46]. Dr. Alladdin Mollabashy performed a revision of Plaintiff's total right knee arthroplasty on May 19, 2015 [TR at 1053-1055, 1057]. After her surgery, Plaintiff saw Dr. Mollabashy three more times: on June 3, July 29, and October 7, 2015 [TR at 987, 1029, 1043]. Dr. Mollabashy averred that Plaintiff was unable to work throughout her recovery process [TR at 991, 1012, 1060]. The ALJ did not give Dr. Mollabashy's opinion controlling weight after finding it too was not sufficiently detailed or consistent with medical expectations. He also stated that he was unable to trace some of Plaintiff's alleged extreme limitations back to a medical cause [TR at 45-46]. Dr. Sherry You-Surles saw Plaintiff on April 11, 2014, and noted Plaintiff was depressed [TR at 648-649]. The ALJ did not give Dr. You-Surles's opinion controlling weight because it also was not sufficiently detailed or consistent with medical expectations and did not connect Plaintiff's alleged extreme limitations back to a medical cause [TR at 45-46]. The ALJ awarded partial weight to Drs. McColm, Mollbashy, and You-Surles's opinions [TR at 47].

Plaintiff contends that the ALJ failed to state good cause for not giving the opinions of Drs. McColm, Mollabashy, and You-Surles controlling weight, and also failed to properly conduct the required § 404.1527(c) analysis [Dkt. 11 at 8]. First, the ALJ stated in his Notice of Decision that he found the restrictive opinion of Dr. McColm to be "brief and conclusory" [TR at 45]. One of the recognized forms of good cause is when the opinion is "conclusory." *See Newton*, 209 F.3d at 455-56. The ALJ proceeded to conduct the relevant factor analysis despite stating good cause [TR at 45]. The ALJ's analysis under the relevant factor analysis was thorough and explained how each factor affected the ALJ's decision to not afford Dr. McColm's opinion controlling weight. *Id.* The ALJ went on to say that he found the opinions of Drs. Mollabashy and You-Surles fared similarly under the same analysis, and therefore, he afforded those opinions lesser weight than the decisions of the state agency consultants [TR at 46-48].

The ALJ's main concern with the opinions of these three physicians was that they were not sufficiently detailed or consistent with medical expectations. *Id.* at 45. He states that he was unable to trace some of Plaintiff's alleged extreme limitations back to a medical cause. *Id.* at 45-46. The Court finds that the ALJ properly explained his decision to not afford Plaintiff's treating physicians' opinions controlling weight. The Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). In the present case, the ALJ properly stated good cause for not affording controlling weight to the three medical opinions on Plaintiff's disability in the record and conducted a thorough analysis of the relevant 20 C.F.R. § 404.1527(c) factors. The ALJ has correctly followed the procedures dictated by the Fifth Circuit in *Newton* as well as the statutory regulations found in 20 C.F.R. § 404.1527.

Since Drs. McColm and Mollabashy concluded Plaintiff is impaired due to pain, among the "other relevant factors" the ALJ must consider when assessing the weight of their opinions, (*see* 20 C.F.R. 404.1527(c)), is the credibility of Plaintiff's subjective complaints when compared to the objective findings reflected in the record as a whole. Upon doing so, the ALJ concluded "the claimant's 'severe' impairments were capable of producing pain or other symptoms that would interfere with the ability to perform basic work activities, they could not reasonably be expected to give rise to the level of disabling limitations the claimant actually alleged. Although I find the claimant to be sincere and genuine, the most serious symptoms and limitations are outside the range of reasonable attribution to a medically determinable impairment(s)." [TR at 49]. The ALJ's decision is supported by the record, includes the analysis required under 20 C.F.R. § 404.1527(c)(2), and explains why the ALJ discounted the RFC opinions of each of Dr. McColm, Dr. Mollabashy, and Dr. You-Surles. *Newton*, 209 F.3d at 455 (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)). The Court therefore finds that the ALJ did not err when he rejected or discounted the opinions of Plaintiff's treating sources.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED.**

**IT IS SO ORDERED.**
**SIGNED this 22nd day of September, 2017.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE